IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MICHAEL W. GRESHAM, | ) | No. 2:08-cv-00190 JMS-BMK |
| | ) | |
| Plaintiff, | ) | FINDINGS AND |
| | ) | RECOMMENDATION THAT |
| vs. | ) | DEFENDANTS' MOTION FOR |
| | ) | SUMMARY JUDGMENT BE |
| BRETT WILLIAMS, et al., | ) | GRANTED |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

FINDINGS AND RECOMMENDATION THAT DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT BE GRANTED

Before the Court is Defendants' Motion for Summary Judgment.[1]

(Doc. # 53.)   After careful consideration of the motion, the supporting and

opposing memoranda, and the attached documentation, the Court RECOMMENDS

that Defendants' Motion for Summary Judgment be GRANTED.

BACKGROUND

Plaintiff Michael Gresham ("Plaintiff") is a prisoner who was

incarcerated at the California Department of Corrections and Rehabilitation's Mule

Creek State Prison ("MCSP") during the time period alleged in his complaint.

(Mem. in Supp. of Mot. at 2.)   On October 1, 2006, Plaintiff injured his right knee

---

[1] Pursuant to Local Rule 230 of the Local Rules of Practice for the United
States District Court, Eastern District of California, the Court finds this matter
suitable for disposition without a hearing.

while working in the MCSP's "B" yard kitchen.  (Compl. at 7.)  An officer

escorted Plaintiff to the medical clinic.  (<u>Id.</u>)  Because a physician was not

available at the medical clinic at that time, an appointment was scheduled for

Plaintiff to return to the medical clinic the following day.  (Mem. in Supp. of Mot.

at 2.)

On October 2, 2006, Plaintiff saw Defendant James Cricket, R.N., for

a follow-up appointment.  (Cricket Decl. ¶ 5.)  Defendant Cricket looked at

Plaintiff's knee and referred Plaintiff to the doctors' line so that he could be seen

by a physician.  (<u>Id.</u> ¶¶ 5, 6.)  On October 29, 2006, Plaintiff filed an administrative

appeal because he had not yet been seen by a physician for his injury.

On November 7, 2006, Defendant Karen Todd, P.A., examined

Plaintiff's knee and diagnosed him as suffering from a torn meniscus.  (Todd Decl.

¶ 7.)  Defendant Todd referred Plaintiff to an outside orthopedic specialist for an

appointment.  (<u>Id.</u>)  Defendant Todd offered Plaintiff a knee brace, but he refused

it.  (<u>Id.</u>)

On January 4, 2007, Plaintiff submitted an Inmate Request for

Interview form to Defendant Carolyne Clark, S.R.N.  (Clark Decl. ¶ 7; Clark Decl.

Ex. A at 1.)  In his form, Plaintiff stated, "[I] have been told numerous times I will

begin to see a specialist.  This still hasn't happened."  (Clark Decl. Ex. A at 1.)

2

Plaintiff requested to speak with Defendant Clark about the issue.  (Id.)

Defendant Clark responded to Plaintiff's request the following day by correspondence.  (Id. at 1-2; Clark Decl. ¶ 9.)  In her response, Defendant Clark informed Plaintiff that she checked into the status of his appointment and was told by the scheduling nurse, Defendant Kelly Martinez, R.N., that an appointment had not yet been made.  (Clark Decl. Ex. A at 2; Clark Decl. ¶ 8.)  Defendant Clark stated that according to Defendant Martinez, the MCSP was having difficulty scheduling Plaintiff's appointment due to a new contract with a different hospital. (Clark Decl. Ex. A at 2; Clark Decl. ¶¶ 8, 9.)

On January 25, 2007, Plaintiff saw Defendant Robert Hawkins, M.D. (Hawkins Decl. ¶ 5.)  Upon reviewing Plaintiff's chart, Defendant Hawkins noted that Plaintiff had been referred to an outside orthopedic specialist.  (Id.)  Defendant Hawkins told Plaintiff that there was nothing he could do to treat Plaintiff pending Plaintiff's appointment with the specialist.  (Id. ¶ 6.)

On February 19, 2007, Defendant Brett Williams, M.D., responded to Plaintiff's administrative appeal and explained to him the reasons for the delay in the scheduling of his appointment.  (Compl. Ex. H at 7.)  In his response, Defendant Williams explained that it takes a minimum of eight to twelve weeks to arrange an outside appointment due to scheduling and transportation requirements.

3

(Id.)  Defendant Williams also explained that the MCSP has "no control over outside appointments but rather [it is] assigned appointment dates by [its] consultants."  (Id.)

On May 4, 2007, Plaintiff saw Michael Henery, M.D.  (Mem. in Supp. of Mot. at 2; Todd Decl. ¶ 9.)  Dr. Henery ordered an MRI scan of Plaintiff's knee, which revealed that Plaintiff had an anterior cruciate ligament tear.  (Mem. in Supp. of Mot. at 2; Todd Decl. ¶ 9.)

On June 15, 2007, Plaintiff saw Defendant Hawkins for a follow-up appointment.  (Hawkins Decl. ¶ 9.)  Because Plaintiff had not yet been seen by an outside orthopedic specialist, Defendant Hawkins prepared a Request for Services to refer Plaintiff again to a specialist.  (Id.)  On August 13, 2007, Plaintiff was seen by an outside orthopedic specialist.  (Id.; Todd Decl. ¶ 9.)

On November 26, 2007, Plaintiff underwent elective reconstructive surgery.  (Hawkins Decl. ¶ 10; Todd Decl. ¶ 9.)  Shortly after his surgery, Plaintiff saw Defendant Wesley Hashimoto, M.D., for a follow-up appointment. (Hashimoto Decl. ¶ 5.)  Defendant Hashimoto removed Plaintiff's bandages, examined his knee and stitches, and prescribed him crutches, pain medication, and a lower bunk.  (Id.)

On January 28, 2008, Plaintiff filed a complaint in the United States

4

District Court for the Eastern District of California, seeking relief pursuant to

42 U.S.C. § 1983.  (Doc. # 1.)  In his complaint, Plaintiff alleged that Defendants

were deliberately indifferent to his medical needs and as a result, he suffered

frequent dislocations of his knee.  (<u>Id.</u> at 14.)  Plaintiff claimed that by the time he

finally received surgery, he was unable to engage in normal daily activities.  (<u>Id.</u>)

By order dated November 24, 2008, this action was reassigned from

the Eastern District of California to the District of Hawaii.  (Doc. # 23.)

On January 26, 2010, Defendants filed their Motion for Summary

Judgment.  (Doc. # 53.)  On March 1, 2010, Plaintiff filed his opposition, and on

March 18, 2010, Defendants filed their reply.  (Docs. ## 63, 64.)

<u>STANDARD OF REVIEW</u>

A court may not grant a motion for summary judgment unless it

determines that there is no genuine issue of material fact and that the undisputed

facts warrant judgment for the moving party as a matter of law.  <u>See</u> Fed. R. Civ.

P. 56(c).  In assessing whether a genuine issue of material fact exists, the court

must resolve all ambiguities and draw all factual inferences in favor of the non-

moving party.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986)

(citing <u>Adickes v. S. H. Kress & Co.</u>, 398 U.S. 144, 158-59 (1970)); <u>see also</u> <u>Cline</u>

<u>v. Indus. Maint. Eng'g & Contracting Co.</u>, 200 F.3d 1223, 1228 (9th Cir. 2000).

In deciding a motion for summary judgment, the court's function is not to try issues of fact, but rather, is only to determine whether there are issues to be tried. <u>Anderson</u>, 477 U.S. at 249. If there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper. <u>See</u> <u>T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626, 631 (9th Cir. 1987).

<u>DISCUSSION</u>

Plaintiff's action is predicated upon a violation of the Eighth Amendment's proscription against cruel and unusual punishment. The Eighth Amendment requires that prisoners receive medical care. <u>Estelle v. Gamble</u>, 429 U.S. 97, 103 (1976). "Under 42 U.S.C. § 1983, to maintain an Eighth Amendment claim based on prison medical treatment, [the plaintiff] must show 'deliberate indifference to serious medical needs.'" <u>Jett v. Penner</u>, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting <u>Estelle</u>, 429 U.S. at 104). The test for deliberate indifference consists of both an objective and subjective component. <u>Toguchi v. Chung</u>, 391 F.3d 1051, 1057 (9th Cir. 2004) (citation omitted). To satisfy the objective component, the plaintiff must show that his medical need was sufficiently "serious" such that failure to treat his condition "could [have] result[ed] in further significant injury or the unnecessary and wanton infliction of pain." <u>Jett</u>, 439 F.3d

6

at 1096 (citation and quotations omitted).  To satisfy the subjective component, the

plaintiff must show that the prison official's "response to the need was deliberately

indifferent."  Id. (citation omitted).

In this case, Defendants argue that Plaintiff has not satisfied the

subjective component of his Eighth Amendment claim.  (Mem. in Supp. of Mot. at

6-7.)  A plaintiff satisfies the subjective component by showing "[1] a purposeful

act or failure to respond to [the plaintiff's] pain or possible medical need and [2]

harm caused by the indifference."  Jett, 439 F.3d at 1096 (citation omitted).  Thus,

deliberate indifference may be shown "when prison officials deny, delay or

intentionally interfere with medical treatment, or it may be shown by the way in

which prison physicians provide medical care.'"  Jett, 439 F.3d at 1096 (citation

and quotations omitted).  However, "[m]ere negligence in diagnosing or treating a

medical condition, without more, does not violate a prisoner's Eighth Amendment

rights."  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on

other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en

banc); see also Estelle, 429 U.S. at 106 (noting that "a complaint that a physician

has been negligent in diagnosing or treating a medical condition does not state a

valid claim of medical mistreatment under the Eighth Amendment").  "Medical

malpractice does not become a constitutional violation merely because the victim is

a prisoner." <u>Estelle</u>, 429 U.S. at 106.

The Court applies the foregoing principles when examining Plaintiff's claims against Defendants.

I.    <u>Defendant Cricket</u>

Defendant Cricket saw Plaintiff the day after he injured his knee. (Cricket Decl. ¶ 5.)  Defendant Cricket claims that during that visit, he observed some swelling to Plaintiff's knee, but Plaintiff was able to ambulate without any difficulty, was not limping, did not complain of any pain, and did not request any medication.  (<u>Id.</u>; Mem. in Supp. of Mot. at 9.)  Defendant Cricket maintains that due to Plaintiff's non-emergent condition, he did not make an emergency referral. (Cricket Decl. ¶ 6.)  Defendant Cricket maintains that instead, he placed Plaintiff on the doctor's line so that he could be seen by a physician.  (<u>Id.</u>)

Plaintiff does not dispute that he did not request any medication and that Defendant Cricket referred him to a physician.  (<u>See</u> Opp. at 2.)  Plaintiff, however, disputes that he was not limping and did not complain of any pain. Plaintiff contends that he had "a limp that got progressively worse" and complained of pain from the day he was injured.  (<u>Id.</u>)  Plaintiff thus argues that Defendant Cricket had an obligation to supply him with medication and medical supplies as was "deem[ed] necessary" and to have a physician examine him that

8

day.  (<u>See</u> <u>id.</u>)

Plaintiff offers no evidence that Defendant Cricket purposefully acted or failed to respond to Plaintiff's medical needs.  <u>Jett</u>, 439 F.3d at 1096.  The uncontroverted evidence shows that Plaintiff's condition was non-emergent, he did not request any medication, and Defendant Cricket referred him to the doctors' line to be seen by a physician.  (Cricket Decl. ¶¶ 5, 6.)  While there was a delay in Plaintiff being seen by a physician, Plaintiff fails to establish that said delay within Defendant Cricket's control.  Accordingly, the Court RECOMMENDS that Defendants' Motion for Summary Judgment be GRANTED as to this Defendant.

II.   <u>Defendant Todd</u>

Defendant Todd examined Plaintiff's knee on November 7, 2006, and diagnosed him with a torn meniscus, which was non-emergent.  (Todd Decl. ¶¶ 7, 10.)  Defendant Todd referred Plaintiff to an outside orthopedic specialist on a non-emergent basis.  (<u>Id.</u>; Mem. in Supp. of Mot. at 8.)  Defendant Todd maintains that Plaintiff did not complain of any pain or ask for any pain medication.  (Todd Decl. ¶ 7.)  Defendant Todd also maintains that she offered Plaintiff a knee brace, but that he refused it.  (<u>Id.</u>)

Plaintiff disputes Defendant Todd's contention that he did not complain of any pain.  Specifically, Plaintiff contends that he complained of

9

dislocations and swelling of his knee.  (Opp. at 2.)  Plaintiff thus argues that

Defendant Todd should have offered him pain medication.  (Id. at 2-3.)  Plaintiff

also argues that Defendant Todd should have told him that he needed a knee brace

rather than have asked him if he wanted one.  (Id. at 2.)

       Plaintiff, in addition, complains that Defendant Todd's "examination

procedures" were inconsistent with those of Dr. Henery and the outside orthopedic

specialist.  (Id.)  Plaintiff claims that neither Dr. Henery nor the specialist "pulled,

tugged, nor sat on [his] foot while jerking on his legs at the knee."  (Id.)  Plaintiff

also complains that it is "questionable" as to why Defendant Todd waited until

December 8, 2006 to order an x-ray.  (Id. at 3.)

       Plaintiff offers no evidence that Defendant Todd purposefully acted or

failed to respond to Plaintiff's medical needs.  Jett, 439 F.3d at 1096.  The

uncontroverted evidence is that Defendant Todd referred Plaintiff to an outside

orthopedic specialist for an appointment. (Todd Decl. ¶ 7.)  Plaintiff does not

dispute that he did not ask Defendant Todd for pain medication and that Defendant

Todd offered him a knee brace, but that he refused it.  Plaintiff complains of

Defendant Todd's examination procedures; however, such complaints are mere

differences of opinion as to proper medical treatment and as such, do not give rise

to deliberate indifference.  Trillo v. Grannis, No. 2:06-cv-00075 JKS-DAD, 2008

WL 2018339, at *2 (E.D. Cal. May 8, 2008) (citations omitted).  Finally, while

there may have been a delay in Defendant Todd ordering an x-ray of Plaintiff's

knee, "a mere delay in medical treatment, absent a showing of resulting substantial

harm is insufficient to support an Eighth Amendment violation."  Rosado v.

Alameida, 497 F. Supp. 2d 1179, 1188 (S.D. Cal. 2007) (citing Shapley v. Nev.

Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).  Here, Plaintiff's

x-ray was "found to be within normal limits."  (Todd Decl. ¶ 8.)  Based on the

foregoing, the Court RECOMMENDS that Defendants' Motion for Summary

Judgment be GRANTED as to Defendant Todd.

III.    Defendant Clark

          Defendant Clark maintains that her only involvement with Plaintiff

was to respond, in writing, to his Inmate Request for Interview form, in which he

requested the status of his referral to an outside orthopedic specialist.  (Clark Decl.

¶ 7.)  Defendant Clark maintains that she checked into Plaintiff's request and

responded to it the day after it was made.  (Id.  ¶¶ 8, 9; Clark Decl. Ex. A at 1-2.)

          Plaintiff contends that Defendant Clark's response to his Inmate

Request for Interview form was inconsistent with standard procedures.  (Opp. at 3.)

Plaintiff appears to contend that he submitted the request so that he could speak

with Defendant Clark in person.  (Id.)  Plaintiff maintains that he did not speak

11

with Defendant Clark in person and complains that Defendant Clark's only action was to follow up on Plaintiff's referral with the scheduling nurse.  (Id.)

The Inmate Request for Interview form expressly states that the inmate making the request "will be called in for an interview . . . if the matter cannot be handled by correspondence."  (Clark Decl. Ex. A at 1.)  In this case, Defendant Clark handled the matter by correspondence.  (Id. at 1-2; Clark Decl. ¶ 9.)  In said correspondence, Defendant Clark informed Plaintiff that she followed up on his referral to an outside orthopedic specialist and was told by the scheduling nurse that the MCSP was having difficulty scheduling an appointment due to a new contract with a different hospital. (Clark Decl. Ex. A at 2.)  Defendant Clark informed Plaintiff that while she cannot tell him the specific date for which an appointment is eventually made, she will notify him once an appointment has been made.  (Id.)  Because there is no evidence that Defendant Clark denied, delayed, or intentionally interfered with Plaintiff's medical treatment, the Court RECOMMENDS that Defendants' Motion for Summary Judgment be GRANTED as to this Defendant.

IV.   Defendant Martinez

Defendant Martinez was the scheduling nurse during the time period alleged in Plaintiff's complaint.  (Martinez Decl. ¶ 4.)  Defendant Martinez argues

that Plaintiff cannot demonstrate deliberate indifference on her behalf as she did

not have any control over the scheduling of Plaintiff's appointment with an outside

orthopedic specialist.  (Id. ¶ 6; Mem. in Supp. of Mot. at 9.)  Defendant Martinez

claims that shortly after Plaintiff was injured, he was referred to an outside

orthopedic specialist at Doctors Hospital of Manteca ("DHM").  (Martinez Decl.

¶ 5.)  Defendant Martinez claims that in January 2007, she was informed that the

only contracted orthopedic specialist at DHM was no longer at that hospital.  (Id.

¶ 8.)  Defendant Martinez claims that the MCSP initiated a contract with an

orthopedic specialist at Tuolumne General Hospital ("TGM").  (Id.)  She, however,

claims that shortly after said contract was initiated, that specialist left TGM and

TGM later closed.  (Id.)  Defendant Martinez claims that the MCSP then entered

into a contract with Queen of the Valley Hospital and that an orthopedic specialist

at that hospital saw Plaintiff on August 13, 2007.  (Id. ¶ 9.)  Defendant Martinez

argues that she "made every effort to schedule Plaintiff's orthopedic appointment

as soon as possible," but because Plaintiff's referral was non-emergent,

appointments are scheduled by the specialist based on the patient's medical history.

(Id. ¶¶ 6, 7; Mem. in Supp. of Mot. at 9-10.)

Plaintiff argues that it is "peculiar" that it took so long for Defendant

Martinez to schedule an appointment with an outside orthopedic specialist.  (Opp.

at 3.)  Plaintiff alleges that "there were so many other inmates being seen,

examined and obtaining corrective surgery from the on-site [orthopedist]."  (Id.)

   While there was a delay in the scheduling of Plaintiff's appointment,

there is no evidence that said delay was within Defendant Martinez's control.

Plaintiff's mere allegations and speculation to the contrary are insufficient to create

a factual dispute for purposes of summary judgment.  Nelson v. Pima Cmty. Coll.,

83 F.3d 1075, 1081-82 (9th Cir. 1996) (noting that "mere allegation and

speculation do not create a factual dispute for purposes of summary judgment").

The Court therefore RECOMMENDS that Defendants' Motion for Summary

Judgment be GRANTED as to Defendant Martinez.

V. Defendant Hawkins

   Defendant Hawkins first saw Plaintiff on January 25, 2007.  (Hawkins

Decl. ¶ 5.)  Defendant Hawkins contends that it was his opinion that Plaintiff's

injury was non-emergent.  (Id. ¶ 6.)  Defendant Hawkins maintains that Plaintiff

did not complain of any pain or request any pain medication.  (Id.)  Defendant

Hawkins also maintains that upon reviewing Plaintiff's chart, he noticed that

Plaintiff had been referred to an outside orthopedic specialist. (Id. ¶ 5.)  Defendant

Hawkins maintains that because Plaintiff had been referred to a specialist, there

was nothing he could do to treat Plaintiff pending his appointment with the

specialist.  (Id. ¶ 6.)

Defendant Hawkins saw Plaintiff for a follow-up visit on

June 15, 2007.  (Id. ¶ 9.)  Defendant Hawkins contends that during that visit, he

prepared a Request for Services to refer Plaintiff again to an outside orthopedic

specialist as Plaintiff had not yet seen one.  (Id.)  Plaintiff saw an outside

orthopedic specialist on August 13, 2007.  (Id.)

Plaintiff does not dispute that during his first visit with Defendant

Hawkins, Defendant Hawkins told him that an appointment with an outside

orthopedic specialist had been made and therefore, there was nothing Defendant

Hawkins could do.  Plaintiff, however, disputes that he did not complain of any

pain.  (Opp. at 3.)  Plaintiff contends that his "knee was in pain and [it] was indeed

swollen."  (Id.)  Plaintiff also contends that Defendant Hawkins refused to examine

his knee, stating that he "[knew] what was wrong with it."  (Id.)  Plaintiff compares

Defendant Hawkins's treatment of him with that of Dr. Henery.  (Id.)  Plaintiff

notes that Dr. Henery prescribed him medication, ordered him to undergo physical

therapy and an MRI, and instructed him to continue using a knee brace that was

previously provided to him.  (Id.)

Plaintiff does not dispute that during his second visit with Defendant

Hawkins, Defendant Hawkins referred him again to an outside orthopedic

specialist.  (Id.)  Plaintiff, however, complains that Defendant Hawkins "did not

proffer anything at all."  (Id.)

    In sum, Plaintiff appears to argue that Defendant Hawkins should

have done more to treat him.  However, as mentioned above, mere differences of

opinion as to proper medical treatment do not give rise to deliberate indifference.

Trillo, 2008 WL 2018339, at *2 (citations omitted).  Rather, the plaintiff must

show that the prison medical official's treatment was "medically unacceptable

under the circumstances" and "in conscious disregard of an excessive risk to [the

plaintiff's] health."  Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996)

(citations omitted).  Here, Plaintiff fails to make such a showing.  Defendant

Hawkins determined that Plaintiff's injury was non-emergent and that there was

nothing he could do to treat Plaintiff pending his appointment with an outside

orthopedic specialist.  (Hawkins Decl. ¶ 6.)  The fact that Defendant Hawkins

made a second referral to an outside orthopedic specialist because Plaintiff had not

yet seen one demonstrates a lack of deliberate indifference.  (Id. ¶ 9.)  While

Defendant Hawkins could have prescribed Plaintiff pain medication, failure to do

so was, at most, mere inadvertence or negligence and therefore, not cognizable

under the Eighth Amendment.  McGuckin, 974 F.2d at 1059-60 (citations omitted);

Estelle, 429 U.S. at 105-06.  Accordingly, the Court RECOMMENDS that

16

Defendants' Motion for Summary Judgment be GRANTED as to Defendant Hawkins.

VI.     Defendant Williams

Defendant Williams argues that Plaintiff cannot demonstrate deliberate indifference on his behalf as his only involvement with Plaintiff was to respond to his administrative appeal and explain to him the reasons for the delay in the scheduling of his appointment.  (See Mem. in Supp. of Mot. at 7.)  In his response, Defendant Williams explained that appointments with outside specialists require a minimum of eight to twelve weeks to arrange due to scheduling and transportation requirements.  (Compl. at 10.)  Defendant Williams also explained that the MCSP has "no control over outside appointments but rather [it is] assigned appointment dates by [its] consultants."  (Id.)  While there was a delay in the scheduling of Plaintiff's appointment, Plaintiff offers no evidence that said delay was within Defendant Williams's control.  Accordingly, the Court RECOMMENDS that Defendant's Motion for Summary Judgment be GRANTED as to Defendant Williams.

VII.    Defendant Hashimoto

Defendant Hashimoto argues that Plaintiff cannot demonstrate deliberate indifference on his behalf as he did not see Plaintiff until after Plaintiff

17

underwent surgery.  (Mem. in Supp. of Mot. at 8; Hashimoto Decl. ¶ 5.)

Defendant Hashimoto further argues that Plaintiff admitted in his deposition that

he is not dissatisfied with Defendant Hashimoto's treatment of him.  (Mem. in

Supp. of Mot. at 8; Pl. Dep. 50:23-51:2, May 14, 2009.)  Plaintiff does not dispute

the foregoing.  Because Plaintiff has not presented any facts indicating that

Defendant Hashimoto purposefully acted or failed to respond to his medical needs,

the Court RECOMMENDS that Defendants' Motion for Summary Judgment be

GRANTED as to this Defendant.

CONCLUSION

Based on the foregoing, the Court FINDS that there is no genuine

issue of material fact that Defendants were deliberately indifferent to Plaintiff's

medical needs in violation of the Eighth Amendment.  As such, the Court

RECOMMENDS that Defendants' Motion for Summary Judgment be GRANTED.

This Findings and Recommendation is submitted to the United States

District Judge assigned to the case, pursuant to 28 U.S.C. § 636(b)(1).  The parties

are advised that any written objections are due a total of seventeen (17) days after

the date the Findings and Recommendation is entered on the docket.  See Local

Rule 304; Fed. R. Civ. P. 6(d).  This Findings and Recommendation is considered

"entered" on the date set forth in the attached Notice of Electronic Filing.

Responses to any objections are due seventeen (17) days after the date the objections are entered on the docket.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO FOUND AND RECOMMENDED.

Dated:  Honolulu, Hawaii, April 20, 2010.



  /S/ Barry M. Kurren
Barry M. Kurren
United States Magistrate Judge

<u>Gresham v. Williams, et al.</u>; Civ. No. 2:08-00190 JMS-BMK; FINDINGS AND RECOMMENDATION THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED.